# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CHARLENE REED, )
)
Plaintiff, )
)
v. ) Case No. CIV-13-881-D
)
STATE OF OKLAHOMA, ex rel., )
OKLAHOMA DEPARTMENT OF )
HUMAN SERVICES and JACE )
THORESON, in his individual )
capacity, )
)
Defendants. )

## ORDER

Before the Court are Defendants' Motions for Summary Judgment [Doc.

Nos. 76, 77] to which Plaintiff has filed her response in opposition [Doc. No. 91].

The matter is fully briefed and at issue.

## BACKGROUND

The following facts are undisputed.[1] Plaintiff, an African-American woman,

has been employed by Defendant, the Oklahoma Department of Human Services

(DHS), since 1979. She began her career as a dietary aide working in the food

service unit and later became a Typist I and was eventually promoted to a Typist

III. DHS typist positions were later converted to Administrative Technician

("Admin Tech") positions, and on October 30, 1999, Plaintiff became an Admin

---

[1]  The material facts in both defendants' motions are virtually identical and, where
uncontroverted, are set forth as a single statement.

Tech III. In August 2010, Plaintiff applied for three Administrative Assistant II positions and one Admin Tech IV position. Although Plaintiff was selected to be interviewed for the Admin Tech IV position, she declined the interview because she was scheduled to be on annual leave that day.[2] Two Caucasian women and an African-American woman were selected for the Administrative Assistant II positions, and a Native American woman was selected for the Admin Tech IV position (Plaintiff believed this woman to be Caucasian).

In late 2011, Plaintiff applied for an Admin Tech IV position. Due to an inadequate number of applicants, the selecting official decided to reopen the application process.[3] Plaintiff reapplied and was interviewed on February 7, 2012. The interview questions related to, among other things, supervisory skills, leadership ability, understanding of confidentiality, and experience with filing reports. All interviewees were asked the same questions. According to the interview scoring matrix, Plaintiff ranked ninth out of eleven candidates. The selecting official received the score sheets for only the three top candidates chosen by the interview committee; therefore, Plaintiff was not considered in the final decision process, and a Caucasian man was selected.

---

[2] Despite the interview being held on her day off, Plaintiff was invited to attend the interview and a time slot was left open for her.

[3] Plaintiff contended the position was closed to allow Defendant Jace Thoreson (Thoreson), who was at the time a probationary employee, an opportunity to become a permanent employee. Thoreson, however, was not selected at the time.

In March 2012, Plaintiff interviewed for another Admin Tech IV position, as well as another Administrative Assistant II position. Shortly thereafter, on March 7, 2012, Plaintiff filed an internal grievance in which she alleged she was discriminated against based on her race. Plaintiff cited her unsuccessful applications for the Admin Tech IV positions, and alleged, *inter alia*, that the interview questions did not pertain to the job and the entire process was biased. On April 9, 2012, Plaintiff filed a charge with the EEOC wherein she complained about the aforementioned interview for the Admin Tech IV position being scheduled on her day off. Plaintiff also alleged she had been subjected to "unfair and preferential hiring" by her supervisor. Plaintiff also complained of changes implemented by her new supervisor, alleging he removed her from her assigned office, where she had been stationed for two years, and "created a hostile work environment by asking an employee to tell him about another employee, and commented he might have to take [Plaintiff's] picture of President Obama out of [her] office." Plaintiff alleged she had been discriminated against because of her race.

On April 17, 2012, the investigator appointed to investigate Plaintiff's internal grievance determined Plaintiff was not discriminated against based on her race, and her supervisor and other hiring officials did not violate Title VII. On May 4, 2012, Plaintiff was interviewed for the Administrative Assistant III position. She

met the minimum qualifications for the job; however, the interview committee, which consisted of an African-American male, an Asian male, and African-American female, ranked Plaintiff tenth out of the ten applicants interviewed. A Hispanic woman, who ranked first, was chosen for the position. On May 9, 2012, Plaintiff interviewed for the Admin Tech IV position. An interview committee, consisting of an African-American man, an African-American woman, and a Caucasian woman, ranked Plaintiff sixth out of the seven applicants. Defendant Thoreson also applied and interviewed for the position and ranked first. The committee rated Thoreson as the best qualified candidate after the interviews and writing exercises, and on May 16, 2012, nominated him for the position. As a result, Thoreson became Plaintiff's supervisor.

On May 22, 2012, Plaintiff submitted another internal grievance, in which she alleged her prior applications for the Admin Tech IV positions were "deliberately and intentionally sabotaged" by DHS directors and she was not chosen due to racial discrimination and retaliation for filing a prior grievance.[4] On July 24, 2012, the civil rights investigator assigned to Plaintiff's grievance issued a report that found no discrimination occurred. On October 11, 2012, Plaintiff filed another EEOC charge in which she alleged her non-selection for the Admin Tech IV position was due to racial discrimination.

---

[4] During this time, Plaintiff consulted a doctor and was diagnosed with depression and hypertension.

On November, 19, 2012, DHS's Child Welfare Division posted nine newly-created Administrative Assistant II positions. All nine positions were to be selected from one group of applicants. In all, twenty nine people applied and twenty three were interviewed. An interview committee consisting of three Caucasians and three African-Americans was established. The interview committee asked each of the applicants the same questions as indicated by a form questionnaire. A scoring matrix was used to compare applicants' selection criteria, which showed that besides the applicants' interview scores, the applicants were rated on whether they met the minimum qualifications for experience, how they were rated on their last evaluation, a review of their application, and their score on a written assignment. Plaintiff was interviewed on January 8, 2013, and was ranked seventeenth out of the twenty three candidates who were interviewed.[5] Plaintiff was not selected for any of the nine positions. Of the nine individuals who were ultimately selected, four were Caucasian, three were African-American, and two were Hispanic.

DHS merit rules require that supervisors annually evaluate the employees they supervise. Supervisors are required to use a form known as a Performance Management Process (PMP), also known as an "OPM-111." The possible rankings

---

[5] The quality of an applicant's response or their rating in a certain area was wholly subjective. For example, Plaintiff scored a "2" on experience, although Linda Voth, the decision maker on many of the positions, admitted no other applicant had as many years working with DHS. Experience alone, however, was not viewed as conclusive proof of an individual's qualifications.

a supervisor may give are "Exceeds Standards," "Meets Standards," "Needs Improvement," and "Does Not Meet Standards." The supervisor is to rate the employee regarding different categories listed on the PMP: Accountabilities, Behaviors, Overall Accountabilities, and Overall Performance.

Thoreson created a PMP for Plaintiff in October 2012. In the "Accountabilities" section, Thoreson rated Plaintiff as "Exceeds Standards" for her covering of the receptionist duties. In "Behaviors," Thoreson rated Plaintiff's teamwork as "Exceeds Standards." On all of the remaining categories, Thoreson rated Plaintiff as "Meets Standards." Thoreson gave Plaintiff an Overall Accountability Rating of "Meets Standards," and gave her an Overall Performance Rating of "Meets Standards." For most of the rating sub-categories, Thoreson provided positive, complimentary statements regarding Plaintiff's completion of tasks, and behaviors. Thoreson states his evaluation of Plaintiff best represented the work she performed for the limited time she was under his supervision. He believes his evaluation was a good evaluation and he intended for it to be a good evaluation. On February 26, 2013, after meeting with Plaintiff to close out her evaluation, however, Plaintiff, refused to sign off on it, claiming it was a bad evaluation. Plaintiff complained that Thoreson did not note she did a good job of gathering clients' shot records and she should have received more "Exceeds Standards" ratings because she was the only employee who performed the relevant

tasks. However, after being permitted to take the evaluation home to suggest changes, Plaintiff neither suggested any changes nor made any comments to the evaluation. Thoreson closed out Plaintiff's PMP for the year on March 7, 2013.

Plaintiff and DHS representatives met at an EEOC-sponsored mediation, and on January 9, 2013, the parties agreed to settle the EEOC charges that were pending. It was agreed that DHS would remove Plaintiff from Thoreson's supervision within thirty days of the mediation agreement; in return, Plaintiff would dismiss the matters raised in her EEOC charges and request that the files be closed. Pursuant to the agreement, Plaintiff was reassigned from Thoreson's supervision and reassigned to a new supervisor, Latricia Clark. Thoreson was never again in Plaintiff's chain-of-command.[6]

On March 7, 2013, Plaintiff filed a complaint for race discrimination and retaliation with the Oklahoma Civil Rights Enforcement Office. During that same

---

[6] At her deposition, Plaintiff testified that she was never again under Thoreson's supervision:

    Q. Okay. And how long before you claim that you were placed back
    under Mr. Thoreson's supervision?
    A. I never was.
    Q. You never were?
    A. Were, huh-uh, no, sir.

* * *

    Q. All right. So you've testified that Mr. Thoreson never became your
    supervisor again, correct?
    A. No, sir, he didn't.

*See* Depo. of Charlene Reed at 78:10-14, 81:10-12, attached as Exhibit 38 to DHS's Motion for Summary Judgment.

period, Clark told Linda Voth (the DHS Child Welfare Services' District Director for Oklahoma County 55D office) things "were not going well" with Plaintiff in that Plaintiff was not doing her job and spending too much time visiting with other employees. Voth reassigned Plaintiff to work under the supervision of Marsha Morgan, where she remains today.

On May 20, 2013, Plaintiff filed another EEOC charge in which she challenged her non-selection for the Admin Tech IV position, as well as the nine Administrative Assistant II positions, on the grounds of racial discrimination and retaliation. On August 1, 2013, Plaintiff filed another EEOC charge alleging she was discriminated against on account of disability (depression and hypertension), and retaliated against for filing prior grievances. Plaintiff also contested her non-selection for the Admin Tech IV and Administrative Assistant II positions, and alleged DHS unlawfully placed her back under Thoreson's chain-of-command in violation of the parties' settlement agreement.

Plaintiff's reassignment did not result in a reduction in pay or job classification. Voth stated the reason for the reassignment was to alleviate the situation between Plaintiff and Clark. Voth was unaware of any disability Plaintiff had. Plaintiff neither indicated nor identified herself as disabled to Voth. Plaintiff never requested any accommodation for her disabilities and always received sick leave when requested.

Before the Court are Plaintiff's causes of action for retaliation in violation of 42 U.S.C. § 1981 against Thoreson, and race discrimination/retaliation, violation of the Rehabilitation Act, and breach of contract against DHS.[7] For the reasons stated below, the Court finds Defendants' motions should be granted.

## STANDARD OF DECISION

"Summary judgment is proper if the movant demonstrates that there is 'no genuine issue as to any material fact' and that it is 'entitled to a judgment as a matter of law.'" *Levy v. Kansas Dept. of Soc. and Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)); Fed. R. Civ. P. 56(a). In implementing this standard, the Supreme Court has stated:

> [T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing

---

[7] In a previous order, Judge West granted Thoreson's Motion to Dismiss Plaintiff's Second Amended Complaint as to her § 1981 race discrimination claim and her § 1983 equal protection claim against him, as well as Plaintiff's § 1983 First Amendment claim. Order, Apr. 3, 2014 [Doc. No. 36]. Judge West also dismissed Plaintiff's claims against Voth, Clark and another DHS employee, Debra Hayes. Order, Apr. 3, 2014 [Doc. No. 37]. The case was reassigned to the undersigned on October 14, 2014. *See* Doc. No. 49.

on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Adler*, 144 F.3d at 671 ("[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. . . . Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." (citing *Celotex*, 477 U.S. at 325)). Therefore, if the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. *Id*.

**DISCUSSION**

**I.    DHS'S MOTION FOR SUMMARY JUDGMENT**

**A.    Race Discrimination and Retaliation Under Title VII**

The Court first addresses Plaintiff's claims stemming from her non-selection to the nine Administrative Assistant II positions. "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). "[The] *McDonnell Douglas* ... three-step analysis requires the plaintiff first prove a prima facie case of discrimination." *Id*. To establish a prima facie case of

discrimination based on a failure to promote,[8] Plaintiff must show (1) she belongs to a minority group, (2) she was qualified for the position she sought, (3) she did not receive the promotion, and (4) the position was filled with a non-minority or remained available following DHS's decision not to promote her. *Castille v. Teletech Customer Care Mgmt. (Co.), Inc.*, 56 F. App'x 895, 897 (10th Cir. 2003) (unpublished) (citing *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000)). If Plaintiff makes out a prima facie case, "[t]he burden then shifts to [DHS] to produce a legitimate, non-discriminatory reason for the adverse employment action." *Khalik*, 671 F.3d at 1192. If DHS meets that burden, "the burden then shifts back to [Plaintiff] to show that her protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id*.

"To show pretext, [Plaintiff] must produce evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [DHS's] stated reasons, such that a reasonable jury could find them unconvincing." *Debord v. Mercy Health System of Kansas, Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (further quotation omitted). Further, in making the determination "whether the proffered reason for a decision was pretextual, [the Court] examine[s] the facts as they

---

[8]The burden of establishing a prima facie case of discriminatory treatment may be satisfied by a "minimal" showing. *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1211 (10th Cir. 2011) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).

appear to the person making the decision, not as they appear to the plaintiff." *Id.* Finally, "[the Court] do[es] not ask whether the employer's proffered reasons were wise, fair or correct; [it must] ask only whether [DHS] honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (further quotation omitted).

With respect to the nine Administrative Assistant II positions, DHS does not contest that Plaintiff has established a prima facie case. Instead, it argues it has articulated legitimate, nondiscriminatory reasons for not selecting Plaintiff to any of the positions, namely, that Plaintiff ranked substantially below the nine individuals that were selected and was not among the best qualified candidates. Mot. for Summary Judgment at 19-20 [Doc. No. 76]. In response, Plaintiff contends the interviewing process was wholly subjective and thereby pretextual:

> Defendant here admits that this process is subjective, that the interview committee judges and rates each individual based on . . . no objective standard. This is to say that Defendant **has not** met its burden to "articulate some legitimate, nondiscriminatory reason" not to promote Plaintiff. Defendant has pointed out that it uses a process, and that this process involves many people and people of different race[s]. However, Defendant does not and cannot show that this interview process is objective. When asked directly Ms. Voth stated there were no objective criteria for scoring these matrices the way she scored them.

*See* Pl. Resp. to Mot. for Summary Judgment at 12 [Doc. No. 91] (emphasis in original).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has failed to show that her protected status was either a determinative

factor in DHS's decision not to promote her or that its explanation was pretextual. The Tenth Circuit has said the use of subjective considerations by employers is "not unlawful per se." *Turner v. Public Service Co. of Colo.*, 563 F.3d 1136, 1145 (10th Cir. 2009) (citing *Bauer v. Bailar*, 647 F.2d 1037, 1045–1046 (10th Cir.1981)). Rather, the use of subjective factors is reviewed on a case-by-case basis, and the court "typically infer[s] pretext ... only when the criteria on which the employers ultimately rely are *entirely subjective* in nature." *Id*. (citing *Green v. New Mexico*, 420 F.3d 1189, 1195 (10th Cir. 2005); *Jones v. Barnhart*, 349 F.3d 1260, 1267-68 (10th Cir. 2003) (emphasis in original)).

Here, the criteria DHS used to rate interviewees were not excessively subjective. The interviewing committee asked each interviewee the same questions and then ranked the applicants based, among other factors, on their responses. *Compare Santana v. City and County of Denver*, 488 F.3d 860, 866 (10th Cir. 2007) (finding that though the interview process at issue was subjective, it was not discriminatory in part because "[t]he panelists asked every applicant the same three questions and then ranked the candidates based on their responses"). A scoring matrix was used to compare applicants' selection criteria, which showed that besides the applicants' interview scores, the applicants were rated on whether they met the minimum qualifications for experience, how they were rated on their last evaluation, a review of their application, and their score on a written assignment.

Moreover, the questions inquired into job-related areas, such as problem solving and communication, planning and organization, as well as familiarity with federal laws and regulations. Such areas were mandatory considerations for the interviewers.[9]

In addition, and perhaps most damaging to Plaintiff's case, is that of the applicants who were ultimately selected for the nine positions, three were African-Americans and two were Hispanic, constituting a majority of those hired. Thus, considering the record as a whole, no reasonable jury could agree with Plaintiff's assertion that the interview process was wholly subjective, pretextual, and thereby discriminatory.

The same result is required with respect to Plaintiff's claim of retaliation. In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Kenfield v. Colo. Dept. of Public Health & Env.*, 557 F. App'x 728, 733 (10th Cir. 2014) (unpublished) (quoting *Argo v. Blue Cross & Blue Shield*

---

[9] DHS attaches the questionnaire from the interview of Helene Myles, who is a plaintiff in a related action. *See Myles v. State of Oklahoma ex rel. Dept. of Human Services, et al.*, No. CIV-13-676-D. Plaintiff and Myles were in the same pool of applicants for the nine Administrative Assistant II positions and there is no contention a different questionnaire was used for Plaintiff's interview.

*of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)). Even assuming Plaintiff has established a prima facie case of retaliation, as shown above she has not overcome DHS's statement of legitimate, non-discriminatory reasons for the challenged action. Viewing the evidence as a whole, the Court finds no reasonable jury would agree that the decision to not promote Plaintiff to any of the Administrative Assistant II positions was based on unlawful retaliation.

### B. Violation of the Rehabilitation Act and Breach of Contract

The beginning of Plaintiff's response states that she "does not further allege any separate and distinct claim other than the claim which Defendant stipulates as timely regarding the failure to promote to one of the nine (9) Administrative Assistant II positions in January 2013." Pl. Resp. to Mot. for Summary Judgment at 4, n. 1 [Doc. No. 91]. Although this statement implies Plaintiff is abandoning her remaining claims against DHS and Thoreson, the Court finds some discussion, even if minimal, of the viability of such claims is warranted. As noted below, even where summary judgment is confessed, the Court has a duty to ensure a defendant has met its responsibility under Rule 56(a) of demonstrating no genuine issue of material fact exists and it is entitled to summary judgment as a matter of law. *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

The Rehabilitation Act of 1973, codified at 29 U.S.C. § 794(a), prohibits entities and programs that receive federal funds from discriminating against

individuals with disabilities and retaliating against those who report disability discrimination. *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1165 (10th Cir. 2014). In order to qualify for relief under the Act, a plaintiff must demonstrate that (1) she is a disabled person within the meaning of the Act; (2) she is otherwise qualified for the job; (3) DHS receives federal assistance, and (4) she was discriminated against because of the disability. *Taylor v. Colo. Dept. of Health Care Policy and Fin.*, 811 F.3d 1230, 1233 n. 3 (10th Cir. 2016); *see also Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997).

For the same reasons stated above, the Court finds summary judgment should be granted on this claim as there is no evidence Plaintiff was discriminated against on the basis of any claimed disability. As the Tenth Circuit explained in *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009), "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record[.]" *Id*. To the extent Plaintiff still pursues such a claim, the Court finds that her allegations of discrimination based on a disability find no support in the record. Plaintiff does not present any facts showing that any of her supervisors were aware of any disability Plaintiff had or that she indicated or identified herself as being disabled. In fact, Plaintiff does not dispute that she never requested any accommodation for her disabilities and always received sick leave when requested. Viewing the evidence as a whole, the

Court finds no reasonable jury would agree Plaintiff was discriminated against on the basis of any disability.

Lastly, Plaintiff's breach of contract claim against DHS alleges DHS breached the settlement agreement by again placing her under Thoreson's supervision or chain-of-command. *See* Second Amend. Compl., ¶ 29 [Doc. No. 25]. However, as noted above, Plaintiff concedes she was removed from Thoreson's supervision and was never again under his chain of command. *Supra* at n. 5. Plaintiff's allegation of breach of contract finds no support in the record and DHS is entitled to summary judgment on this claim.

## II.    THORESON'S MOTION FOR SUMMARY JUDGMENT[10]

Plaintiff's remaining claim against Thoreson was for retaliation under 42 U.S.C. § 1981. "Both Title VII and § 1981 support a cause of action for retaliation and require a plaintiff to establish the same prima facie elements to recover."

---

[10] Plaintiff filed only one response brief. Although the response's caption does not indicate which motion she intended to respond to, as noted above, Plaintiff has seemingly abandoned all claims other than her challenge to her non-selection to the nine Administrative Assistant II positions and her response is narrowly tailored to that claim. The Court, nevertheless, has a duty to ensure Thoreson has met his initial responsibility under Rule 56(a) of demonstrating that no genuine issue of material fact exists and he is indeed entitled to summary judgment as a matter of law. It may not simply grant a summary judgment by confession. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) ("a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is 'appropriate' under Rule 56.").

*O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1258 (10th Cir. 2001) (citation omitted). At the first instance, the Court finds Plaintiff has failed to establish a prima facie case of retaliation, as there is no causal connection between Plaintiff's protected activity and the complained of conduct. As shown above, Thoreson became Plaintiff's supervisor on May 16, 2012. On May 22, 2012, Plaintiff filed a grievance, naming Thoreson as a person who received the job for which she had applied. On October 8, 2012, Plaintiff filed her EEOC charge. Plaintiff's meeting with Thoreson regarding her evaluation was conducted on February 26, 2013 and Thoreson's evaluation was completed on March 7, 2013.

In evaluating similar claims of retaliation, the Tenth Circuit has held that, in the absence of other evidence tending to show causation, a three-to-four month time gap between the protected conduct and the adverse employment action is insufficient to establish causation on its own. *See Fryer v. Coil Tubing Services, LLC*, 415 F. App'x 37, 46 (10th Cir. 2011) (unpublished) ("[U]nless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation. . . . A three-month gap, standing alone, between the filing of his claim and the challenged employment action does not permit an inference of causation.") (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)); *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1182 (10th Cir. 2006) ("[A] three-month

period, standing alone, is insufficient to establish causation") (citing *O'Neal v.*
*Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)); *Richmond v.*
*ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period of time
between employee's request for overtime pay and her termination was insufficient
to establish causal connection for purposes of retaliation claim under Fair Labor
Standards Act and Family and Medical Leave Act).

Even assuming Plaintiff has established a prima facie case of retaliation, she
has not presented sufficient facts to overcome Thoreson's legitimate, non-
discriminatory reasons for his evaluation. Thoreson states his evaluation of
Plaintiff best represented the work she performed for the limited time she was
under his supervision. Thoreson did not rate Plaintiff anything below "Meets
Standards," and he believed his evaluation was a good evaluation and he intended
for it to be a good evaluation. No evidence in the summary judgment record
establishes pretext. Thus, summary judgment in Thoreson's favor is warranted
based on the uncontroverted facts.

**CONCLUSION**

Defendants' Motions for Summary Judgment [Doc. Nos. 76, 77] are

**GRANTED** as set forth herein. A judgment shall be entered accordingly.

   **IT IS SO ORDERED** this 19th day of July, 2016.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE